PATRICK KING, Respondent, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

In an action to recover damages for injuries resulting from the breaking of an iron hook and falling of a mast to a derrick belonging to defendant, plaintiff alleged negligence in that the hook was insufficient. Upon the trial plaintiff produced a piece of iron, which his evidence tended to show was part of the broken hook, and after the testimony of experts had been given, as to evidence of weakness in the iron, it was shown to the jury. *Held*, no error.

One of plaintiff's attorneys was called as a witness in his behalf and gave material testimony. Upon cross-examination he testified that his compensation depended in some degree upon the result of the action. He was then asked "to what extent?" This was objected to and objection sustained. *Held*, no error.

The extent of a cross-examination upon a collateral issue, as to the credibility of the witness, is in the discretion of the court, and its holding is not the subject of review unless there is an abuse of discretion.

Upon an issue as to identity, a witness may testify to opinion or belief.

(Argued January 28, 1878; decided February 12, 1878.)

THIS was an action to recover damages for injuries alleged to have been sustained through defendant's negligence. It is reported upon a former appeal in 66 N. Y., 181.

Plaintiff was injured by the fall of the gaff or boom of a derrick belonging to defendant. One Dillon had entered into a contract with defendant to unload from vessels into its cars all the railroad iron brought for it to the dock in the city of Albany. As plaintiff's evidence tended to show, defendant agreed to furnish a derrick for the work and to keep the same in repair. Plaintiff was engaged with Dillon in the performance of the contract when the hook which supported the boom and tackle broke; the boom, in falling, struck plaintiff and did the injury complained of. The principal questions arose upon exception to a denial of a motion for a nonsuit. These were disposed of upon the evidence.

Upon the trial plaintiff's counsel produced a piece of iron claimed by him, and which plaintiff's evidence tended to show, was a part of the broken hook, and that it was in the same condition as when the accident occurred. The testimony of experts was given as to indications of weakness shown by the iron. Plaintiff's counsel claimed that there were cross-cracks upon the piece of iron and asked a witness if he did not see them. This was objected to, on the ground, among others, that there was no evidence how the cracks came there. The objections were overruled. *Held*, no error.

Also, *held*, proper to exhibit the iron to the jury.

One of plaintiff's witnesses, who had testified as to the identity of the piece of iron, was asked, "Have you any

doubt this is the same piece?" This was objected to; objection overruled and answer received. *Held*, no error.

One of plaintiff's attorneys was called and examined as a witness and gave material testimony as to the piece of iron. Upon cross-examination, he was asked if his compensation depended upon the result of the suit. He answered, "in some degree." He was then asked, "to what extent?" This was objected to and objection sustained.

The views of the court, as expressed in the opinion upon these points, are as follows:

" In *People* v. *Gonzalez* (35 N. Y., 49), it was held proper to exhibit to the jury the clothes of the prisoner, for the jury to satisfy themselves that there were stains upon them, and stains of blood. That is analogous with the matter in hand. Would it have been error, in the case cited, to have made the exhibition to the jury, in connection with testimony, for them to say, from inspection and the testimony, whether the stains, if of blood, were new or old, and if old, dating back a long period? There would not. So, in this case, there was or was not something visible in the piece of iron which plaintiff's counsel called cross-cracks. The eyes of the jury were as good to see whether they were there, as the eyes of a witness, and the testimony of their eyes would be as satisfactory to them as that given by a witness. If the jury should find that the iron shown was part of the iron broken, then they could apply the information got by personal inspection, and say whether there were cracks there. It was proper for the court to tell them not to do so until they had found the first-mentioned fact. There is no substance in more common use than iron, and there is no more common result of the use of it than a breakage. The general experience of men is conversant therewith, and all men, as a rule, have made more or less observation of the appearance of that metal after a break, and know a flaw in it when they see it; and whether the break is bright and fresh in appearance, newly made, or dull and soiled, long, or some time since produced, and, with more or less accuracy, whether appearances given by the broken metal were probably existing while it

was in use, were produced by the breakage, or by violence or manipulation afterwards. The appearances may be deceptive sometimes. Close and skilled scrutiny, with scientific appliances, might judge with more certainty than common observation. Yet common observation is allowed in these matters of common occurrence to give and have its judgment, subject to the duty of giving it up to the result of more highly skilled and closer inspection. Such is the doctrine of the case last referred to, and it is to be remembered that the testimony tended to show that the iron was in the same condition when produced on the trial as when taken from the deck of the barge. That observation in this case would not be so satisfactory, as in one, the facts of which were more recent, is true ; and that would have made proper a caution in that direction, if called for by the defendant, but it does not suspend or make an exception to the principle above set forth, or render impossible a correct result. The case of *Yates* v. *The People* (32 N. Y., 509) is not applicable. There it was sought to show by testimony what an artificial thing — the flame of a street lamp — was on the twenty-first January, for the jury to infer what another artificial thing — the flame of a street lamp — was on the first of October previous, for that is the principle of the decision. The argument of the opinion of Bowen, J., is that it is impossible to infer that the two things were the same in power and effect, because it was not proved that all the conditions of the one were the same as those of the other. Here, the thing to be observed is the very same, with testimony that its condition is the same. That is the significance of the direction, to first find if it had been identified as the same ; and the observation applied to the same is to ascertain whether the changes in it from its first condition are new or old ; to ascertain which is within the competency of common observation, in a greater or less degree.

The question to Ronan : " Have you any doubt this is the same piece ? " it was not erroneous to admit. It was upon an issue of identity. In such an issue a witness may testify to opinion or belief. (*Folkes* v. *Chad*, 3 Doug., 159; *Rex*

v. *Pedley*, Leach's Cr. Cas., 365.) And a question like that put was proper to test the strength of his opinion or belief. It is alleged as error that the court excluded the question put by the defendant in cross-examination, to the attorney for the plaintiff when on the stand as a witness in his behalf, " to what extent " his compensation was dependent upon the recovery. The attorney was then occupying the position of a witness adverse to the defendant. There was the same collateral issue as to his credibility, before the jury, as in the case of any other witness. He had testified to a material matter going to show the identity of the piece of iron produced in court with that found on the deck of the barge. If he was interested, it was for the jury to say whether that interest affected his credibility. An interest to a small amount might not, in the judgment of the jury, affect a witness so as to swerve him, when a large sum would. But still, as has been said, it was a collateral issue. The only purpose of the query was to affect the credibility of the witness; in one sense, to impeach him. In such case a cross-examination is in the discretion of the court. (*Gt. W. Turnp. Co.* v. *Loomis*, 32 N. Y., 127; *LeBeau* v. *People*, 34 id., 223.) The holding is not the subject of review, unless there has been an abuse of discretion, which we do not descry."

*Matthew Hale* and *Samuel Hand* for appellant.

*E. Countryman* for respondent.

FOLGER, J., reads for affirmance.
All concur, except ALLEN, J., taking no part.
Judgment affirmed.